UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STAN CHRISTIANSON, individually,<br><br>　　Plaintiff,<br><br>v.<br><br>THE BOEING COMPANY, a Delaware Company with its headquarters in Illinois doing business in the state of Washington,<br><br>　　Defendant. | Case No. C20-1349RSM<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |

## I.　INTRODUCTION

This case comes before the Court on Defendant Boeing's Motion for Summary Judgment. Dkt #23. Plaintiff Stan Christianson opposes. Dkt. #27. Neither party has requested oral argument. For the following reasons, the Court GRANTS Boeing's Motion and dismisses all of Mr. Christianson's claims.

## II.　BACKGROUND

In 2018 Mr. Christianson worked as a Project Manager performing lean manufacturing implementation for Boeing's 777 commercial airliner. Dkt. #15 ("Amended Complaint") at ¶ 2.2; Dkt. #26-1, Ex. 1 ("Christianson Dep.") at 25:25-26:21.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 1

Mr. Christianson was required to maintain acceptable attendance under Boeing's policies. Christianson Dep. at 48:3-11; Dkt. #25 ("Rosenbaum Decl."), ¶ 2. Under Boeing's policy, five or more consecutive days of unexcused absences by an employee is considered "unacceptable attendance." *Id.*; Dkt. #24 ("Calvert Decl."), ¶ 3. An absence covered by Boeing's benefits, such as vacation or sick leave, is excused. Christianson Dep. at 50:20-24; Rosenbaum Decl. at ¶ 2. An approved leave of absence is also excused and not a violation. Christianson Dep. at 51:19-52:1; Rosenbaum Decl. at ¶ 2. Employees with five consecutive unexcused absences are subject to immediate termination, even if it is their first offense. Rosenbaum Decl. at ¶ 2; Calvert Decl. at ¶ 3.

Boeing has a process for employees to request a leave of absence; employees can call a "leave desk" to initiate the process. Rosenbaum Decl. at ¶ 3. Once the leave desk has received the request, the employee's manager and the employee receive notifications. *Id*.

Mr. Christianson knew of this process. Christianson Dep. at 42:2-21; 93:15-18. In March of 2017, he requested a leave of absence for a medical issue. *Id*. at 40:10-41:5. Boeing granted the request. *Id*. at 42:6-8. In April of 2017, Mr. Christianson requested another leave of absence for a medical issue. *Id*. at 40:10-41:5. Boeing again granted it. *Id*. at 42:19-21. In both instances, Mr. Christianson followed Boeing's process by contacting and applying through the leave of absence department directly. *Id*. at 41:6-16; 42:2-5.

Boeing also has a process for employees to request a disability accommodation. Rosenbaum Decl. at ¶ 4. Employees can request an accommodation through Boeing Medical, who will notify a Boeing Disability Management Representative ("DMR"), or directly through a DMR. *Id*. Mr. Christianson knew of this process too. After returning from his leave in April 2017, Mr. Christianson followed Boeing's process to request an accommodation, which Boeing

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 2

approved. Christianson Dep. at 43:11-16; 44:14-17. Mr. Christianson had previously requested other accommodations from Boeing's accommodations department, including for an ergonomically correct chair and to not lift 35 pounds, both of which were approved. *Id*. at 43:22-44:13.

From March 12, 2018, through March 27, 2018, Mr. Christianson was absent from work for twelve consecutive days. Dkt. #26-1 Ex. 2 ("Wagner Dep.") at 55:22-56:9; Christianson Dep. at 66:21-67:1. He did not apply for a leave of absence to cover these absences. Christianson Dep. at 67:13-15; Calvert Decl. at ¶¶ 3, 4. He did not have vacation, sick leave, or any other Boeing benefit to cover these absences. Calvert Decl. at ¶ 3. Instead, he texted his supervisor Jeffrey Wagner to say he would not be reporting to work. Christianson Dep. at 72:6-73:11, Dkt. #26-1 at 56–59. From March 12 through March 23 Mr. Christianson gave no explanation for why he was not at work other than a reference to being "sick." Christianson Dep. at 78:6-15. He also texted Mr. Wagner that he would be reaching out to Boeing's Employee Assistance Program ("EAP"), but he never did. *Id*. at 72:6-73:11, Ex. 7; *id.* at 77:11-19. Mr. Christianson was aware of the EAP and knew how to access it because he had previously done so. Id. 44:18-20; 45:2-4; 58:15-17. On March 26, 2018—his eleventh day of absence without excuse—Mr. Christianson texted Mr. Wagner to say he "had severe bouts of insomnia" and it was "unlikely" that he would be reporting to work. *Id*. at 72:6-73:11, Ex. 7; *id.* at 78:21-79:3. Mr. Christianson states he was absent for the first five days because he had cold and flu-like symptoms, and that these symptoms evolved into sleep apnea and insomnia issues two weeks later, on March 26. Christianson Dep. at 67:17-23; 74:24-75:10; 76:9-25. That day, Mr. Wagner escalated the unexcused absences to human resources, and noted the "egregious nature of this violation, that the employee has a similar CAM on record within the past year"

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 3

and that "[e]xpectations have been pre-established by management." Calvert Decl. ¶ 2, Ex. 1. Boeing assigned the case to Human Resources Generalist Caitlin Calvert, who confirmed with Boeing's leave of absence department that Mr. Christianson had not requested a leave of absence. Calvert Decl. ¶ 3. She instructed Mr. Wagner to call Mr. Christianson and tell him that he did not have benefits (that is, vacation, sick leave, or an approved leave of absence) to cover his time away from work, so he needed to request a leave of absence, return to work the following day, or be discharged. *Id*. On March 26, 2018, Mr. Wagner called Mr. Christianson and so informed him, leaving a voicemail. Wagner Dep. at 16:21-17:7; 55:9-21. The next day, March 27, Mr. Christianson did not report to work. Calvert Decl. ¶ 4. After confirming that Mr. Christianson had still not requested a leave of absence to cover his absences, Mr. Wagner approved the decision to terminate Mr. Christianson's employment. Wagner Dep. at 56:10-12.

Mr. Wagner issued Mr. Christianson a Corrective Action Memo ("CAM") for his discharge, which states: "It has been determined that you have been absent from work for an extended period of time. The company deems this unacceptable and it will not be tolerated." Calvert Decl. ¶ 4, Ex. 2. On March 27, 2018, Mr. Wagner called Mr. Christianson and informed him that he was being discharged. Christianson Dep. at 88:4-12. Mr. Wagner told Mr. Christianson that the reason for his termination was violation of a company policy for failure to appear at work. *Id*. 90:10- 91:5.

Mr. Christianson states he had "multiple conversations" with Mr. Wagner about his sleep deprivation, insomnia, and sleep apnea, but—critically—Mr. Christianson admits in deposition that he never told Mr. Wagner or anyone at Boeing that his alleged insomnia or sleep apnea affected his ability to do his job. Christianson Dep. 79:10-13; 79:25-80:5. He says the reason for this is because "[t]hat's not something that I'm comfortable divulging to a manager."

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 4

*Id.* at 80:3-4.  Prior to 2014, Mr. Christianson told his manager at the time, Jeanne Bartels, that he had insomnia, sleep apnea, and trouble sleeping, and he documented on his performance review, which Ms. Bartels reviewed, that he had a goal to "get more sleep." *Id*. at 81:3-82:3; Bartels Dep. 13:17-14:4; 29:2-8; 29:20-30:4.  However, there is no evidence Mr. Christianson told Ms. Bartels his sleep apnea or insomnia affected his ability to perform his job, to the contrary Ms. Bartels states she knew about the sleep apnea and insomnia but testified that Mr. Christianson's sleep apnea/insomnia did not affect his job performance or his attendance. Dkt. #26-1, Ex. 2 ("Bartels Dep.") at 15:23-16:16; 30:14-23.  In any event, after Ms. Bartels was no longer Mr. Christianson's manager there is no evidence that his new manager or anyone else at Boeing had knowledge of these conditions until the March 26 text message.

Mr. Christianson believes he has had insomnia and sleep apnea almost his entire twenty-six-year career at Boeing. Christianson Dep. at 68:20-69:4. He states no Boeing manager ever made derogatory comments about his insomnia. *Id*. 95:4-8.

This case was filed on September 11, 2020.  Dkt. #1.  An amended complaint was filed on May 11, 2021.  He alleges he was terminated because of his disability in violation of the Washington Law Against Discrimination ("WLAD"), RCW 49.60 *et seq*.  Dkt. #15 at 4–5.

### III.   DISCUSSION

**A.  Legal Standard for Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248.  In ruling on summary judgment, a court does not weigh evidence to determine the truth of

the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B. Analysis**

Mr. Christianson claims he was wrongfully discharged in violation of the Washington Law Against Discrimination ("WLAD"). The WLAD provides that it is an unfair practice for an employer "[t]o discharge or bar any person from employment because of . . . the presence of any sensory, mental, or physical disability." RCW 49.60.180(2). A disabled employee may bring a cause of action under the WLAD for either disability discrimination or for failure to accommodate his or her disability. *Johnson v. Chevron U.S.A., Inc.*, 159 Wn. App. 18, 27-28, 244 P.3d 438, 443 (2010).

To establish a prima facie case of failure to accommodate, a plaintiff must show: "(1) the employee had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job; (2) the employee was qualified to perform the essential functions of the job in question; (3) the employee gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the employer failed to affirmatively

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 6

adopt measures that were available to the employer and medically necessary to accommodate the abnormality." *Davis v. Microsoft Corp.*, 149 Wn.2d 521, 532, 70 P.3d 126 (2003) (emphasis, quotation and citation omitted).

For a disability discrimination claim with no direct evidence of discrimination, Washington applies the *McDonnell Douglas* burden-shifting framework. *Hines v. Todd Pac. Shipyards Corp.*, 127 Wn. App. 356, 371, 112 P.3d 522 (2005) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). Under this framework, a plaintiff has the initial burden of establishing a prima facie case. *Id*. The burden then shifts to the defendant to present evidence of a legitimate, nondiscriminatory reason for the adverse action. *Id*. If the defendant meets its burden, the plaintiff "must produce sufficient evidence showing that the employer's alleged nondiscriminatory reason for the discharge was a pretext." *Mackey v. Home Depot USA, Inc.*, 12 Wash. App. 2d 557, 459 P.3d 371, 382 (Wash. Ct. App. 2020), *review denied*, 195 Wn.2d 1031, 468 P.3d 616 (Wash. 2020) (internal quotation marks and citation omitted). "The plaintiff carries the ultimate burden at trial to prove discrimination was a substantial factor in employer's actions." *Hines*, 112 P.3d at 529.

To establish a prima facie case, a plaintiff must show that he was: "[1] disabled, [2] subject to an adverse employment action, [3] doing satisfactory work, and [4] discharged under circumstances that raise a reasonable inference of unlawful discrimination." *Brownfield v. City of Yakima*, 178 Wash. App. 850, 316 P.3d 520, 533 (2014).

There does not appear to be a genuine dispute as to Mr. Christianson's absences from work or what he said and did not say to his supervisor prior to his termination. Under Washington law, an employer's duty to reasonably accommodate an employee's disability "does not arise until the employee makes the employer aware of the disability." *Snyder v. Med.*

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 7

*Serv. Corp. of E. Wash.*, 145 Wn.2d 233, 35 P.3d 1158, 1162 (2001). The employer's "duty to determine the nature and extent of the disability" only applies "after the employee has initiated the process by notice." *Frisino v. Seattle Sch. Dist. No. 1*, 160 Wash. App. 765, 249 P.3d 1044, 1050 (Wash. Ct. App. 2011). "An employer is not required to speculate as to the extent of an employee's disability or the employee's need or desire for an accommodation." *Bedeski v. Boeing Co.*, No. C14-1157RSL, 2015 WL 5675427, at *3 (W.D. Wash. Sept. 25, 2015) (quoting *Gantt v. Wilson*, 143 F.3d 1042, 1046-47 (6th Cir. 1998)). Mr. Christianson has failed to make a sufficient showing that he informed his supervisor (or anyone else at Boeing) that his insomnia affected his ability to do his job such that he needed an accommodation. It is clear from the record that Mr. Christianson knew of Boeing's process for requesting an accommodation—he simply did not do so in this instance. With insufficient evidence to support this element, dismissal of the reasonable accommodation claim is warranted as a matter of law.

Mr. Christianson has also failed to show that he was discharged under circumstances that raise a reasonable inference of unlawful discrimination, or that Boeing's reason for discharge was pretext for discrimination. He has stated that no one at Boeing ever made derogatory comments about his insomnia. Christianson Dep. 95:4-8. The discharge was clearly initiated after a policy violation that would typically result in discharge in any employment setting. Boeing had a legitimate nondiscriminatory reason for termination. Mr. Christianson has not offered any evidence that Boeing terminated him for any reason other than his unexcused absences and it would not be reasonable to infer such from the record. Accordingly, dismissal of this claim is also warranted as a matter of law.

### IV.   CONCLUSION

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 8

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that Boeing's Motion for Summary Judgment, Dkt #23, is GRANTED. All of Plaintiff's claims are DISMISSED. This case is CLOSED.

DATED this 11th day of May, 2022.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE